| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-198 (2) |
| | § | |
| EGLAEL SOTO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Eglael Soto's ("Soto") *pro se* Motion for Compassionate Release (#479) ("First Motion"), wherein Soto requests that the court modify her sentence and immediately release her from prison due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#485). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Also pending before the court is Soto's *pro se* "Complaint and Request for Preliminary Injunction and TRO" (#497) ("Second Motion"), wherein Soto requests to serve the remainder of her sentence on home confinement.[1] The Government filed a response (#500), requesting the court to incorporate its response to Soto's First Motion as a response to Soto's Second Motion. Having considered the motions, the Government's responses, Probation's recommendation, and the applicable law, the court is of the opinion that the motion should be DENIED.

---

[1] Soto filed the Second Motion with the United States District Court for the Northern District of Alabama. The Chief Deputy Clerk for the Northern District of Alabama reviewed the document and determined that it was a motion for compassionate release. Because Soto was sentenced in the Eastern District of Texas, the Chief Deputy Clerk for the Northern District of Alabama forwarded Soto's motion to this court.

I.      Background

On June 13, 2018, a federal grand jury in the Eastern District of Texas returned a Second Superseding Indictment against Soto and thirteen codefendants.  Count 1 charged Soto with Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. § 846; Count 2 charged Soto with Conspiracy to Possess with Intent to Manufacture and Distribute Heroin, in violation of 21 U.S.C. § 846; and Count 3 charged Soto with Conspiracy to Possess with Intent to Manufacture and Distribute Cocaine, in violation of 21 U.S.C. § 846. On October 1, 2018, Soto pleaded guilty to Count 1 of the Second Superseding Indictment pursuant to a non-binding plea agreement.  On February 1, 2019, the court sentenced Soto to 168 months' imprisonment, followed by a 4-year term of supervised release.  On October 22, 2019, Soto's sentence was reduced to 100 months' imprisonment, followed by a 4-year term of supervised release.  She is currently housed at Federal Correctional Institution Aliceville, located in Aliceville, Alabama ("FCI Aliceville").  Soto's projected release date is April 24, 2026.

II.     Analysis

At the outset, the court notes that in her Second Motion, Soto cites Rule 65 of the Federal Rules of Civil Procedure, seeking injunctive relief against the "[United States] Marshalls [sic], William Barr AG, Aliceville Warden/Prison FBOP."  Although unclear, the court interprets Soto's Second Motion as a request for the court to order the Bureau of Prisons ("BOP") to place her on home confinement for the duration of her sentence.  Soto's reliance on Rule 65 is misplaced, however, as this is a *criminal* proceeding.  *See* FED. R. CIV. P. 1 ("These rules govern the procedure in all *civil* actions and proceedings in the United States district courts[.]" (emphasis added)); *United States v. Garcia*, 804 F. App'x 274, 275 (5th Cir. 2020) ("[C]ivil rule does not

apply in criminal cases."); *United States v. Moore*, 671 F. App'x 349, 350 (5th Cir. 2016) (same), *cert. denied*, 137 S. Ct. 2103 (2017).  Furthermore, "the Federal Rules of Civil Procedure do not apply to motions under § 3582."  *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir.), *cert. denied*, 561 U.S. 1036 (2010); *see United States v. Norwood*, 755 F. App'x 813, 815 (10th Cir. 2018) ("[T]he Rules of Civil Procedure do not apply to [defendant's] § 3582 motion."); *United States v. Calton*, 900 F.3d 706, 713-14 (5th Cir. 2018) (stating that "a § 3582(c)(2) motion is not a civil postconviction action but a step in a criminal case" (quoting *United States v. Alvarez*, 210 F.3d 309, 310 (5th Cir. 2000))).  In short, Rule 65 does not provide the relief sought by Soto.

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *1 (5th Cir. Sept. 3, 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").   Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 ("The

4

text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, it is unclear whether Soto has exhausted her administrative remedies.  In her motion, Soto states that she "tried several ways to request compassionate release and was ignored [at] all avenues."  From the materials she has provided, it appears that she sought assistance from BOP staff to submit a request for compassionate release beginning in May 2020, but she provides no documentation regarding if and when she submitted such a request.  Probation reports that the BOP indicated that it did not receive her request until June 14, 2020.  The Government provides a copy of an unsigned and undated denial letter from the acting warden of FCI Aliceville.  The warden advises Soto:  "Currently, you do not meet the criteria Based on Medical Circumstances.  A review of your recent medical summary reflects you do not suffer from any chronic illness that will prevent you to independently attend to your activities of daily living."  The Government also attached a letter from Xinyu Daniel Li, M.D./Ph.D., the clinical director of FCI Aliceville, dated June 16, 2020, recommending the denial of Soto's request.  Thus, the court cannot say that Soto

either received a denial from the acting warden or waited thirty days after the acting warden's receipt of such request before filing the instant motion on July 6, 2020.  Nevertheless, even if Soto complied with the exhaustion requirement before filing the current motion, nothing in her motion indicates that extraordinary and compelling reasons exist to reduce her sentence.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

policy statements issued by the Commission.  18 U.S.C. § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

As grounds for relief, Soto states that she suffers from hypertension and obesity and that these health issues increase her risk of severe illness from COVID-19.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

Soto, age 33, asserts her hypertension as an extraordinary and compelling reason justifying her release.  Probation's report states that Soto is taking medication for her hypertension and remains under medical supervision.  Indeed, Soto attached a copy of a prescription label in her name for losartan potassium, which is prescribed to control her blood pressure, dated November 26, 2019.  BOP medical records provided by the Government confirm that Soto has essential hypertension and show that her last clinical encounter with the BOP health services was in November 2019.  At her last visit, while her records note "BP not well controlled," her medication was changed from amlodipine to lorsartan.  In his June 2020 letter to the acting warden, Dr. Li, the clinical director for FCI Aliceville, noted that Soto "does not have any chronic illness except for well-controlled hypertension," adding "[t]here is no evidence to suggest

that [she] suffers from physical or mental disability to prevent her from performing activities of daily living (ADLs)."

In her reply (#494) to the Government's response, in addition to hypertension, Soto raises for the first time her obesity as a factor justifying compassionate release.  A review of Soto's Presentence Investigation Report ("PSR"), prepared in January 2019, reveals that Soto reported that she was 5 feet, 6 inches tall, with a weight of 230 pounds.  As of November 26, 2019, her last reported visit with BOP medical staff, Soto weighed 223 pounds, which, when combined with her height of 5 feet, 6 inches, places her Body Mass Index score at 36, well above 30, the threshold for obesity.  Soto's PSR also notes, however, that Soto reported that she was in good physical condition and did not have a history of any health-related issues.  Probation's recent report also observes, "No additional risk factors or health concerns were noted in the defendant's file."  Soto included limited medical records from the BOP which indicate that she is medically classified as a "Care Level 1" inmate,[2] and that she has no medical restrictions, has a regular duty work assignment, and is cleared for food service.  Thus, Soto's medical summary does not meet the criteria listed in the guidelines.  Her medical conditions are not terminal, nor do they substantially diminish her ability to provide self-care.  Hence, Soto has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce her sentence.

Moreover, granting Soto compassionate release would fail to provide just punishment for her offense and promote respect for the law.  In *Chambliss*, the United States Court of Appeals

---

[2] According the BOP guidance, a Care Level 1 inmate is less than 70 years of age and generally healthy.  She may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months.

for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence. *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* In the present case, releasing Soto after she has served only 18 months of her 100-month sentence would similarly minimize the impact of her crime and the seriousness of the offense.

Soto's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director

in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). In the case at bar, there is no suggestion that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Soto for any "other" reason. It is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Soto's situation.

Soto expresses concerns regarding the spread of COVID-19 among the prison population. There is no indication, however, that FCI Aliceville is ill-equipped to handle an outbreak in the facility. As of September 28, 2020, the figures available at www.bop.gov list 7 inmates (out of a total inmate population of 1,261) and 8 staff members at FCI Aliceville as currently positive for COVID-19, while 18 inmates and 9 staff members have recovered, and no inmates or staff members have succumbed to the disease. Therefore, although Soto expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat her, if she were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.");

*United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, 451 F.Supp.3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Thus, Soto has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release her from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94.  The nature and circumstances of Soto's offense of conviction entails her participation in an international drug trafficking conspiracy involving the importation and distribution of 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual).  Soto supplied coconspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, for distribution to others in the Eastern and Northern Districts of Texas.  Further, she picked up drug proceeds on behalf of the drug trafficking organization and wired the drug proceeds to Mexico via money orders.  In addition, she has a history of substance abuse, including the daily use of

11

marijuana and the weekly use of methamphetamine for the year prior to her arrest in the instant case.  Under the circumstances, the court cannot conclude that Soto would not pose a danger to the safety of any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  To date, the BOP has placed 7,695 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Ambriz v. United States*, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

12

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, there is no reason to believe that Soto would not revert to her drug-dealing and drug-abusing activities if released from prison at this juncture.

In short, Soto has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not

sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at \*4-5 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at \*6; *Koons*, 2020 WL 1940570, at \*5.

III.   Conclusion

In accordance with the foregoing analysis, Soto's First Motion (#479) and Second Motion (#497) are DENIED.

SIGNED at Beaumont, Texas, this 29th day of September, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE